## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA   :   CASE NO.  19-2606

                                      :

v.                           :   Dist. Ct. No. 1:11-CR-96

                                      :

MICHAEL STRAUSBAUGH   :   District Court Chief Judge

                                      :   Christopher C. Conner

## APPLICATION FOR CERTIFICATE OF APPEALABILITY

Appellant, Michael Strausbaugh, by and through his undersigned counsel, respectfully submits this Application to the Court for a Certificate of Appealability pursuant to 28 U.S.C. § 2253, and Rule 22(b) of the Federal Rules of Appellate Procedure, on two issues raised by Mr. Strausbaugh arising from his Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

## PROCEDURAL HISTORY

Michael Strausbaugh and his wife, Rebecca Strausbaugh, were arrested and charged with federal offenses on March 18, 2011.  The Grand Jury returned an Indictment on March 23, 2011, and then a Superseding Indictment on May 4, 2011. In the original Indictment, Mr. Strausbaugh was charged with three counts: (1) Sexual Exploitation of a Child on or about December 28, 2010, in violation of 18 U.S.C. § 2251(a) and (e); (2) Distribution of Child Pornography on or about February 5, 2011, in violation of 18 U.S.C. § 2252 (a)(2) and (b); and (3)

Possession of Child Pornography on or about December 28, 2010, through March 18, 2011, in violation of 18 U.S.C. § 2252A(a)(5)(B).  The Superseding Indictment added counts (4) Sexual Exploitation of a Child on or about December 3, 2010, in violation of 18 U.S.C. § 2251(a) and (e); (5) Sexual Exploitation of a Child on or about August 21, 2010, in violation of 18 U.S.C. § 2251(a) and (e); and (6) Forfeiture, under 18 U.S.C. § 2253.

Mr. Strausbaugh pleaded not guilty.  Mr. Strausbaugh and his wife/co-defendant waived their right to a jury trial, and proceeded to a bench trial before the Honorable William Caldwell of the Middle District of Pennsylvania on October 24 to 26, 2011.  Mr. Strausbaugh was represented at trial by James. J. West, Esquire.  On October 26, 2011, Judge Caldwell found Mr. Strausbaugh guilty on all counts.  On May 8, 2012, Mr. Strausbaugh was sentenced to a total of 540 months imprisonment, consisting of 360 months each on Counts 1, 4, and 5, and 120 months on Count 3, to be served concurrently, as well as 180 months on Count 2, to be served consecutively to all other counts.

Mr. Strausbaugh filed an appeal from the judgment to the Third Circuit Court of Appeals. Mr. Strausbaugh was represented on appeal by Brett Riegel, Esquire.  The judgment was affirmed on direct appeal.  *See United States v. Strausbaugh*, 534 Fed. Appx. 178, Docket No. 12-2434 (3rd Cir. Aug. 9, 2013).

Mr. Strausbaugh filed a petition for *writ of certiorari* to the United States Supreme Court, which was denied on October 6, 2014.

Mr. Strausbaugh then timely filed a *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 on September 28, 2015.  In the original motion to vacate, Mr. Strausbaugh asserted twenty-one grounds for relief.  Thereafter, Mr. Strausbaugh was permitted to supplement and amend his motion to vacate several times, resulting in a total of twenty-four counts being raised.  On November 15, 2016, the undersigned counsel was appointed for Mr. Strausbaugh.

The District Court held an evidentiary hearing on December 21, 2017, to address  the factual issues raised in the motion to vacate.[1]  At the outset of the hearing, Mr. Strausbaugh, through counsel, withdrew grounds 13, 14, and 21, which grounds addressed ineffective assistance of appellate counsel.

On May 22, 2019, the District Court denied § 2255 relief, and also denied the issuance of a certificate of appealability.  (Doc. 289, attached as Exhibit A to this Motion.)  A notice of appeal was filed on July 10, 2019.

---

[1]On June 29, 2017, the case was reassigned to the Honorable Christopher C. Conner, Chief Judge of the Middle District of Pennsylvania, due to the retirement of Judge Caldwell.

## RELEVANT FACTUAL BACKGROUND

As part of the investigation in this case, there was a search of the Strausbaugh home and office on March 18, 2011.  A few weeks after that search, the investigating officers discovered a blue hard drive.  (Section 2255 Hr'g Tr. at pp. 19-20.)  The discovery of this blue hard drive led to the addition of counts 4 and 5 in the Superseding Indictment, because the blue hard drive contained photographs taken by Mr. Strausbaugh on additional dates.  (*Id*. at pp. 19-20, 26.) The lead agent in this case, Postal Inspector Corricelli, testified that Counts 4 and 5 in the Superseding Indictment were added because of the images found on the blue hard drive, and would not have been added but for the government's search of the blue hard drive.  (*Id*. at p. 190.)

Two of the investigating agents, Special Agent Huynh and Postal Inspector Corricelli, testified that the blue hard drive was seized from the inside of Mr. Strausbaugh's truck that was stored on the property of Josh Nace, who was a friend of Mr. Strausbaugh.  (*Id*. at p. 163, 176-177.)  Nace consented to a search of his property on April 20, 2011.  (*Id*. at p. 164, 176-177; Gov. Ex. 6.)  Nace also provided a letter showing that Mr. Strausbaugh gave him authority over the truck. (*Id*. at p. 178; Gov. Ex. 7.)

After the blue hard drive was seized by the government, it was searched and

additional images were found.  (*Id*. at p. 26.)  Attorney West did not move to

suppress the incriminating evidence found on the blue hard drive.  (*Id*. at p. 26.)

Mr. Strausbaugh believes that Attorney West should have moved to suppress the

evidence obtained from the blue hard drive because he could not have been

convicted on Counts 4 and 5 without that evidence.  (*Id*. at p. 28.)

The government searched the hard drive without a search warrant.  (*Id*. at pp.

26-27, 167, 178.)  Neither Mr. Strausbaugh, nor his wife, nor his friend Josh Nace

authorized a search of the blue hard drive.  (*Id*. at pp. 27-28, 167.)   Postal

Inspector Corricelli testified that he asked the state police computer crime lab to

search the blue hard drive.  (*Id*. at p. 177.)  He provided the crime lab with a copy

of a consent to search form signed by Josh Nace because he believed that the

consent form covered the search of the hard drive.  (*Id*. at pp. 177-178;

Government Ex. 6.)   Inspector Corricelli later realized that the consent form did

not include a consent to conduct a secondary search of the contents of the blue hard

drive.  (*Id*. at p. 178; Government Ex. 6.)

## ARGUMENT

## A CERTIFICATE OF APPEALABILITY IS WARRANTED WHERE MR. STRAUSBAUGH HAS MADE A SUBSTANTIAL SHOWING THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL

To obtain a certificate of appealability ("COA"), the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(a) & (c). To satisfy the "substantial showing" requirement, the applicant must "[d]emonstrate that his petition involves issues which are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 330 (2003). In *Miller-El*, the Supreme Court articulated the standard for determining when a certificate of appealability is warranted. The Court stated:

> [O]ur opinion in Slack held that a COA does not require a showing
> that the appeal will succeed. . . . . The holding in Slack would mean
> very little if appellate review were denied because the prisoner did not
> convince a judge, or, for that matter, three judges, that he or she would
> prevail. It is consistent with § 2253 that a COA will issue in some
> instances where there is no certainty of ultimate relief. After all, when
> a COA is sought, the whole premise is that the prisoner "has already
> failed in that endeavor. . . ." [While] a prisoner seeking a COA must
> prove "something more than the absence of frivolity" of the existence
> of mere 'good faith' on his part." We do not require petitioner to
> prove, before the issuance of a COA, that some jurists would grant the
> petition for habeas corpus. Indeed, a claim can be debatable even
> though every jurist of reason might agree, after the COA has been
> granted and the case has received full consideration, that petitioner
> will not prevail.

*Id.* at 337-338 (internal citations omitted).   Doubts about whether to issue a COA should be resolved in favor of the appellant.  *See Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997).

Since the issues presented in this application both involve ineffective assistance of counsel, the defendant must show that he has made a "substantial showing" on both prongs of the *Strickland* test: (1) that counsel's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.  *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Day*, 969 F.2d 39, 40 (3d Cir. 1992).

Mr. Strausbaugh maintains that he has raised factual and legal claims of a constitutional magnitude, and that he has "demonstrate[d] that his petition involves issues which are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 330.  Accordingly, Mr. Strausbaugh should be granted a COA on the following grounds:

**I.    Trial Counsel Provided Ineffective Assistance by Failing to Move to Suppress the Evidence Obtained by the Government's Warrantless Search of the Blue Hard Drive,  and the Defendant Was Prejudiced by this Ineffective Assistance**.

There was a viable argument that the evidence obtained by the Government from the blue hard drive during a warrantless search should be suppressed.   Mr. Strausbaugh's trial counsel failed to challenge the search of the blue hard drive.  If trial counsel had challenged the warrantless search of the blue hard drive, there is a reasonable probability that Mr. Strausbaugh would not have been convicted of Counts 4 and 5 in this case.

**A.    The failure to move to suppress the contents of the blue hard drive fell below an objective standard of reasonableness.**

It is undisputed that Attorney West did not move to suppress the evidence obtained by the Government from the blue hard drive.  It is also undisputed that the Government searched the blue hard drive without the authorization of a search warrant.  The question is whether Attorney West's failure to move to suppress the evidence obtained from the blue hard drive fell below an objective standard of reasonableness under prevailing professional norms taking into account all of the circumstances in this case.

The Fourth Amendment protects an individual's reasonable expectation of privacy from unauthorized government intrusion in their persons, houses, papers,

and effects.  U.S. CONS. AMEND. IV*; Katz v. United States*, 389 U.S. 347, 360

(1967).  Where an individual possesses a reasonable expectation of privacy,

typically the Government must obtain a warrant prior to searching.  *Kyllo v. United*

*States*, 533 U.S. 27, 33 (2001).  A warrantless search is *per se* unreasonable under

the Fourth Amendment, subject to a few specifically established exceptions.

*Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *Katz*, 389 U.S. at 357.

The Government bears the burden of demonstrating that a warrantless search was

permissible under an exception to the warrant requirement.  *United States v.*

*Donahue*, 764 F.3d 293, 300 (3d Cir. 2014).  If the Government can not make this

showing, then the exclusionary rule will generally bar admission of the illegally

obtained evidence.  *Weeks v. United States*, 232 U.S. 383, 398 (1914); *United*

*States v. Herrold*, 962 F.2d 1131, 1143 (3d Cir. 1992).

**The first question** is whether Mr. Strausbaugh had a reasonable expectation

of privacy in the blue hard drive.  The blue hard drive was the personal property of

Mr. Strausbaugh, and it was removed from a drawer in his garage office at some

point after he was arrested.  (Hr'g Tr. at pp. 20-24.)  Mr. Strausbaugh clearly

possessed a reasonable expectation of privacy in the contents of his hard drive,

which was an "effect" that is analogous to a sealed package.  *See United States v.*

*Jacobsen*, 466 U.S. 109, 114 (1984) (holding that sealed packages are "effects" in

which the public has a legitimate expectation of privacy); *see also, United States v. Scott*, 673 F. Supp. 2d 331, 339 (M.D. Pa. 2009) (holding that defendant had a reasonable expectation of privacy in a computer removed from a residence where he had no expectation of privacy because the computer was his personal property, and suppressing fruits of warrantless computer search.)

**The second question** is whether, in the absence of a search warrant, the Government could demonstrate that the search of the contents of the blue hard drive was permissible under an exception to the warrant requirement.[2]

Consent to search is a valid exception to the warrant requirement, and may be given either by the suspect or by some other person who has common authority over, or sufficient relationship to, the item to be searched. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *United States v. Matlock*, 415 U.S. 164, 171 (1974). But in this case, there was no consent by any party to a search of the contents of the blue hard drive. On the face of the consent form, it is plain that Josh Nace consented only to the search of his property and vehicles, and that Nace

---

[2]It appears that Josh Nace had authority to consent to the search of the truck where the blue hard drive was found. And, the seizure of the blue hard drive by Postal Inspector Corricelli after it was removed from the truck was justified by the third party consent of Josh Nace, probable cause to believe the hard drive could contain contraband, and/or the legitimate need to prevent destruction of evidence. *See, e.g., United States v. Clutter*, 674 F.3d 980, 984-85 (8th Cir. 2012) (citing *United States v. Place*, 462 U.S. 696, 701, 705-06 (1983); *United States v. Respress*, 9 F.3d 483, 486 (6th Cir. 1993); *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009)).

consented only to the <u>seizure</u> of the hard drives – not the search thereof.  (*See* Gov't Hr'g Ex. 6.)

But even assuming that Nace had consented to the search of the contents of the hard drive, that consent is valid only if Nace had "common authority" or "sufficient relationship to" the hard drive to validly authorize such search. *Matlock*, 415 U.S. at 171.  "This is not necessarily the case when the person claimed to have given consent is only a bailee." *James*, 353 F.3d at 613.  The owner of personal property does not "cede dominion over an item to another just by putting him in possession." *Id.* at 614 (collecting cases finding that bailees do not have authority to consent to search of effects).  Absent evidence that Mr. Strausbaugh gave Nace the authority to access the contents of the hard drive, Nace did not have authority to consent to a search of the contents as he was only a bailee.

**The third question** is whether, assuming that the evidence was illegally obtained from the hard drive, there is any valid basis upon which the evidence could have been admitted under an exception to the exclusionary rule.

The inevitable discovery doctrine "permits the introduction of evidence that *inevitably would have* been discovered through lawful means, although the search that actually led to the discovery of the evidence was unlawful." *Herrold*, 962

F.2d. at 1140.   "It is the Government's burden to show that the evidence at issue

would have been acquired through lawful means, a burden that can be met if the

government establishes that the police, following routine procedures, would

inevitably have uncovered the evidence." *United States v. Vasquez De Reyes*, 149

F.3d 192, 195 (3d Cir. 1998).

The images stored on the blue hard drive were not discoverable by any

means other than accessing the hard drive and searching the contents.  The search

was done in this case by the Government without applying for a warrant.  The

District Court found that the agent had probable cause to apply for a search

warrant.  Even assuming that is true, the fact that there may have been probable

cause sufficient to justify the issuance of a search warrant – in the absence of any

effort by the agent to obtain a warrant – "is not a circumstance which permits the

application of the inevitable discovery doctrine." *United States v. Richardson*,

2007 U.S. Dist. LEXIS 71477 at *7-*9 (W.D. Pa. Sept. 26, 2007) (collecting

Circuit Court cases holding that the failure to apply for a warrant despite the

presence of probable cause precludes application of the inevitable discovery

doctrine); *see also United States v. Mallory*, 2013 U.S. Dist. LEXIS 33532 at *36-

*46 (E.D. Pa. Mar. 12, 2013), *aff'd on other grounds, United States v. Mallory*,

765 F.3d 373 (3d Cir. 2014 (without comment on inevitable discovery); *see also*

*United States v. Reilly*, 224 F.3d 986, 995 (9th Cir. 2000); *United States v. Jones*,

72 F.3d 1324, 1334 (7th Cir. 1995).

Just as in the *Crist* case, where police conducted a warrantless search of a

computer that was lawfully seized: "Here, the core of the Fourth Amendment is

implicated – the officers, without exigency and without authorization conducted an

unbounded, warrantless search of a person's [hard drive], despite the fact that a

warrant could easily be obtained." *United States v. Crist*, 627 F. Supp. 2d 575, 589

(M.D.Pa. 2008).  As demonstrated, if trial counsel had moved to suppress the

evidence obtained from the blue hard drive, there was a reasonable likelihood of

success on the merits of such motion, and trial counsel rendered deficient

performance in failing to challenge this evidence.  *See Thomas v. Varner*, 428 F.3d

491, 501-02 (3d Cir. 2005); *Morrison v. Kimmelman*, 752 F.2d 918, 922 (3d Cir.

1985).

      **B.**      **The defendant was prejudiced by trial counsel's**
               **ineffectiveness.**

Counts 4 and 5 in the Superseding Indictment were added because of the

images found on the blue hard drive, and would not have been added but for the

Government's search of the blue hard drive.  (Hr'g Tr. at p. 190.)  Mr. Strausbaugh

was convicted of Counts 4 and 5.  (Doc. No. 132.)  If Mr. Strausbaugh's trial

counsel had moved to suppress the images found on the blue hard drive, and if

such motion had been granted, it appears that the Government would have had no evidence to prove Counts 4 and 5 at trial.  Based on the analysis in Section I.A. of this brief, there was a strong likelihood of success on the merits of the suppression motion, if trial counsel had challenged the evidence.  Thus, but for trial counsel's deficient performance in failing to move to suppress this critical evidence, Mr. Strausbaugh would have avoided conviction on Counts 4 and 5. *See Varner*, 428 F.3d at 504.

Consequently, jurists of reason would find debatable the District Court's ruling that Mr. Strausbaugh was not prejudiced by trial counsel's failure to move to suppress the evidence obtained by the Government's warrantless search of the blue hard drive.

## II.    Trial Counsel Provided Ineffective Assistance by Opening the Door to Evidence from Mr. Strausbaugh's Proffer Session with Law Enforcement,  and the Defendant Was Prejudiced by this Ineffective Assistance.

Mr. Strausbaugh admitted during a proffer session with law enforcement that he distributed child pornography images via the internet with 8 to 12 different people.  (Gov. Ex. 10 from Section 2255 H'rg, Dec. 21, 2017.)  The Government was not permitted to use this information provided by Mr. Strausbaugh against him in the Government's case-in-chief at trial pursuant to the proffer agreement between Mr. Strausbaugh and the Government.  (Gov. Ex. 9 from Section 2255

Hr'g, Dec. 21, 2017.)

At trial, Attorney West questioned Mr. Strausbaugh on direct examination about additional distributions by Mr. Strausbaugh through the internet. (Trial Transcript, Day Two, p. 23, lines 4-9.) Attorney West thus opened the door to the Government questioning Mr. Strausbaugh about these additional distributions during cross examination. On cross examination, the prosecutor asked Mr. Strausbaugh how many times he traded pictures, to which Mr. Strausbaugh responded: "Maybe eight to a dozen times." (Trial Transcript, Day Two, p. 43, lines 5-11.) The Presentence Report for Mr. Strausbaugh indicated that he admitted during a proffer interview that he traded child pornography with between eight twelve different individuals. (Gov. Ex. 11 from Section 2255 Hr'g, Dec. 21, 2017, at ¶ 10.)

The District Court concluded that there was no prejudice from the introduction of this testimony, because Mr. Strausbaugh was convicted of Count II (distribution of child pornography) based on the email transfer of PICT0321 to Canada. (Mem. Op. at p. 29.) The District Court held: "Accordingly, even if Attorney West had been deficient in opening the door to proffer-session evidence, Strausbaugh cannot demonstrate prejudice." (*Id.*)

However, the District Court's conclusion overlooks the prejudice argument

actually raised by Mr. Strausbaugh on this issue.  He argues not that he would not have been convicted of the distribution count, but that the sentencing court would not have imposed a fifteen-year consecutive sentence on Count II (the distribution count) if the evidence had been properly limited to the single image (PICT0321) that he emailed to Canada.  If the evidence had been confined to the single image, then there is a reasonable probability that the sentencing court would have imposed a lower sentence on the distribution count.  In a footnote, the District Court referred to this argument as a "bald assertion" and a "conclusory allegation" without support.  (Mem. Op. at p. 29, n. 6.)

At the sentencing hearing, Judge Caldwell did not state a specific reason for imposing a fifteen-year concurrent sentence on the distribution count.  (Sentencing Tr. at p. 27.)   It was possible for Judge Caldwell to impose a shorter sentence, and it was also possible to impose a concurrent sentence on the distribution count.[3] *See, e.g., United States v. Siegel*, 477 F.3d 87, 89 (3d Cir. 2007) (defendant with same count of conviction and similar criminal history sentenced to 65 months); *see also United States v. White*, 506 F.3d 635, 650-51 (8th Cir. 2007) (dissent observing that defendants with hundreds of images of child pornography deserve more

---

[3]At the sentencing hearing, Judge Caldwell sustained a defense objection to the Presentence Report, and concluded that no enhanced mandatory minimum sentences would apply based on Mr. Strausbaugh's prior criminal history.  (Sentencing Tr. at p. 9.)

punishment than those with a single image, whereas defendants with only a single image deserve relatively less harsh sentences); *United States v. Borho*, 485 F.3d 904, 911 (6th Cir. 2006) (noting that a single image of child pornography warrants a less serious sentence).  In this case, Mr. Strausbaugh maintains that there is a reasonable likelihood that he would have received a lesser sentence and/or a concurrent sentence on Count II if the sentencing court had been considering only a single image instead of multiple distributions, as elicited by his own attorney. Mr. Strausbaugh believes that jurists of reason would find debatable the District Court's ruling that Mr. Strausbaugh was not prejudiced by trial counsel opening the door to the evidence of his additional distributions of child pornography.

## **CONCLUSION**

For the foregoing reasons, Mr. Strausbaugh is asking this Court to issue a certificate of appealability on the foregoing issues.

Respectfully submitted,

s/Jennifer P. Wilson

Jennifer P. Wilson, Esquire
PA 209893
PHILPOTT WILSON LLP
227 N. High St., P.O. Box 116
Duncannon, PA 17020
717-834-3087 - Phone
717-834-5437 - Fax
jenniferphilpottwilson@gmail.com

Attorney for Michael Strausbaugh

July 26, 2019

Encl:  Exhibit A - Trial Court Opinion

## CERTIFICATE OF COUNSEL

I, Jennifer P. Wilson, certify that I am a member of the Bar of the United

States Court of Appeals for the Third Circuit.

s/ Jennifer P. Wilson
JENNIFER P. WILSON

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion consists of 4,083 words, and does not

exceed the 5,200 word limit.

s/ Jennifer P. Wilson
JENNIFER P. WILSON

## IDENTICAL PDF AND HARD COPY CERTIFICATE

I hereby certify that the PDF file and hard copies of this motion are identical.

s/ Jennifer P. Wilson
JENNIFER P. WILSON

## <u>VIRUS SCAN CERTIFICATE</u>

I hereby certify that this brief has been automatically scanned during

preparation and upon sending by the virus detection software installed on my

computer network, which is SonicWall.

s/ Jennifer P. Wilson

JENNIFER P. WILSON

## **CERTIFICATE OF SERVICE**

AND NOW, this 26th  day of July, 2019, the undersigned certifies that she is

a person of suitable age and discretion to be competent to serve papers.  The

undersigned further certifies that she served a copy of the foregoing document

upon the following person by filing the document by means of Electronic Case

Filing on this date.


AUSA Daryl Bloom
Daryl.bloom@usdoj.gov


Respectfully submitted,

s/Jennifer P. Wilson
Jennifer P. Wilson, Esquire
PA 209893
PHILPOTT WILSON LLP
227 N. High St., P.O. Box 116
Duncannon, PA 17020
717-834-3087 - Phone
717-834-5437 - Fax
jenniferphilpottwilson@gmail.com

Attorney for Michael Strausbaugh

July 26, 2019

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-96** |
| | : | |
| **v.** | : | **(Chief Judge Conner)** |
| | : | |
| **MICHAEL STRAUSBAUGH (1),** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Defendant Michael Strausbaugh ("Strausbaugh") was sentenced to 45 years' imprisonment after being convicted of multiple offenses involving child sexual exploitation and possession and distribution of child pornography. Strausbaugh moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Doc. 212). We will deny Strausbaugh's motion.

## I. Factual Background & Procedural History

In March 2011, a grand jury returned a three-count indictment charging Strausbaugh with sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e) (Count I); distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b) (Count II); and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count III). Less than two months later, a grand jury returned a superseding indictment charging two additional counts of sexual exploitation of a child under 18 U.S.C. § 2251(a) and (e) (Counts IV and V). Strausbaugh's wife, Rebecca Strausbaugh, was also charged in Count I of the original indictment and in Counts I, IV, and V of the superseding indictment. The superseding indictment included forfeiture allegations under 18 U.S.C. § 2253.

In October 2011, a three-day bench trial was held before the Honorable
William W. Caldwell.  Strausbaugh and his wife were convicted on all counts.
Judge Caldwell sentenced Strausbaugh to an aggregate term of 540 months'
imprisonment, consisting of 360 months on each of Counts I, IV and V, to run
concurrently; 120 months on Count III, to run concurrently to Counts I, IV and V;
and 180 months on Count II, to run consecutively to all other counts.  The Third
Circuit Court of Appeals affirmed Strausbaugh's conviction and sentence.  United
States v. Strausbaugh, 534 F. App'x 178, 180 (3d Cir. 2013) (nonprecedential).  The
United States Supreme Court subsequently denied Strausbaugh's petition for a
writ of certiorari.  Strausbaugh v. United States, 135 S. Ct. 99 (2014) (mem.).

Strausbaugh timely filed a pro se motion under 28 U.S.C. § 2255, asserting 21
grounds for relief.  He thereafter supplemented his motion to raise three additional
claims.  Judge Caldwell determined that a hearing was required on the motion and
appointed counsel for Strausbaugh.  This case was then transferred to the
undersigned due to Judge Caldwell's retirement.  We convened an evidentiary
hearing on December 21, 2017, during which Strausbaugh, through counsel,
withdrew grounds 13, 14, and 21 related to ineffective assistance of appellate
counsel.[1]  (Hr'g Tr. 3:22-5:5).  The parties have filed two rounds of post-hearing
supplemental briefing, and Strausbaugh's Section 2255 motion is now ripe for
disposition.

---

[1] Citations to the transcript of the December 21, 2017 hearing are abbreviated
herein as "Hr'g Tr. __."  Citations to the government's hearing exhibits are
abbreviated as "Gov't Hr'g Ex. __."

## II.   **Legal Standard**

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  28 U.S.C. § 2255.  Courts may afford relief under Section 2255 on a number of grounds including, *inter alia*, "that the sentence was imposed in violation of the Constitution or the laws of the United States."  28 U.S.C. § 2255(a); <u>see also</u> 28 U.S.C. § 2255 Rule 1(a).  The statute provides that, as a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  The court accepts the truth of the defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record."  <u>United States v. Booth</u>, 432 F.3d 542, 545 (3d Cir. 2005).  A court is required to hold an evidentiary hearing when the motion "allege[s] any facts warranting § 2255 relief that are not clearly resolved by the record."  <u>United States v. Tolliver</u>, 800 F.3d 138, 141 (3d Cir. 2015) (quoting <u>Booth</u>, 432 F.3d at 546).

## III.   **Discussion**

Strausbaugh's Section 2255 motion, after supplementation and withdrawal of several claims, contains 21 grounds for relief.  To the extent possible, we will group these claims rather than address them in numerical order.  We begin with Strausbaugh's independent claims (grounds 15, 16, 17, 22, and 24) before turning to those sounding in ineffective assistance of counsel (grounds 1 through 12 and 23) and related cumulative error (grounds 18, 19, and 20).

## A.     Independent Grounds for Relief

Strausbaugh asserts five claims that have no relation to ineffective assistance of counsel.  We take these claims *seriatim*.

### 1.     *Ground 15 – Jurisdictional Due Process Challenge*

Strausbaugh claims that his Fifth Amendment right to due process was violated when he was convicted under Section 2251(a) and Section 2252A(a)(5)(B) without the United States proving a sufficient nexus to interstate activity.  This ground for relief reflects a constant refrain from Strausbaugh that the federal government overstepped its constitutional authority when it prosecuted him for purely intrastate activity by improperly utilizing one of the "jurisdictional hooks" in those statutes.

A jurisdictional hook is "a clause that purports to ensure that the law only covers activity that has a substantial effect on interstate commerce" so as to remain within Congress's enumerated powers under the Commerce Clause.  United States v. Rodia, 194 F.3d 465, 468 (3d Cir. 1999).  In the child sexual exploitation and possession of child pornography statutes at issue, Strausbaugh focuses on clauses regarding child pornography produced or transmitted "*using materials* that have been mailed, [or] shipped, or transported in or affecting interstate or foreign commerce by any means[.]"  18 U.S.C. §§ 2251(a), 2252A(a)(5)(B) (emphasis added).  Strausbaugh contends that the government should have been required to prove that he had entered interstate commerce by voluntary affirmative acts and that his illegal conduct had a substantial effect on interstate commerce.  This attack, though characterized as an as-applied due process challenge, is really a repackaged form of

the Commerce Clause argument Strausbaugh raised on direct appeal and that is
found in his first ineffectiveness claim (ground 1).  This challenge, in all its
iterations, is meritless.

The Third Circuit has repeatedly upheld as constitutional the federal
prosecution of child pornography and sexual exploitation offenses for child
pornography "produced using materials" that have traveled in interstate or foreign
commerce.  In Rodia, the defendant challenged his conviction involving an almost
identical jurisdictional foundation in a former version of 18 U.S.C. § 2252(a)(4)(B).
Rodia, 194 F.3d at 468.  The panel rejected that challenge, finding that "Congress
could rationally have believed that intrastate possession of pornography has
substantial effects on interstate commerce."  Id. at 468-69, 482.  Likewise, in United
States v. Galo, 239 F.3d 572 (3d Cir. 2001), the Third Circuit rejected a constitutional
challenge to another nearly identical jurisdictional element, this time in Section
2251(a), by invoking the rationale set forth in Rodia.  Galo, 239 F.3d at 574-76 (citing
Rodia, 194 F.3d at 468, 471, 473).  Strausbaugh has neither identified authority
overruling Rodia and Galo nor challenged the sufficiency of the evidence regarding
the jurisdictional hooks at issue.  We therefore conclude that Strausbaugh's federal

prosecution and conviction on Counts I, III, IV, and V did not run afoul of the

Commerce Clause or violate his due process rights under the Fifth Amendment.[2]

### 2. *Ground 16 – Johnson Claim*

Strausbaugh claims that his sentence violates due process because the

government did not show any actual harm to the victim.  He argues that the

sentencing judge was compelled to speculate as to the victim's injuries, devolving to

harm suffered in the "ordinary case."  (Doc. 213-1 at 97-98).  Strausbaugh asserts

that he caused minimal harm to the victim because she was only eight months old

at the time and could have no lasting memory of the events.  He maintains that he

should not have received the statutory maximum sentence of thirty years—

apparently a reference to the statutory maximum sentence on *any* of the production

counts—when others have caused far greater injury.

Strausbaugh's argument relies on out-of-context quotations from Johnson

v. United States, 576 U.S. __, 135 S. Ct. 2551 (2015).  That reliance is misplaced.  The

Supreme Court in Johnson addressed a vagueness challenge to the constitutionality

of the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C.

§ 924(e).  The ACCA compels a 15-year mandatory minimum sentence for persons

---

[2] Strausbaugh also raises Fourth and Ninth Amendment concerns in ground 15.  These claims are procedurally defaulted as Strausbaugh has proffered no reason why they could not have been raised prior to trial or on direct appeal.  See United States v. Travillion, 759 F.3d 281, 288 n.11 (3d Cir. 2014) (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)).  We will deny relief on ground 17—a Tenth Amendment claim—for the same reason.  We countenance Strausbaugh's Fifth Amendment due process claim in ground 15 only because its underlying jurisdictional argument pervades the instant motion and resurfaces in his ineffective-assistance-of-counsel claims.

convicted under 18 U.S.C. § 922(g) who have acquired three prior, adult convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The ACCA defines "violent felony" to include three categories of offenses: (1) crimes having "as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) crimes of burglary, arson, or extortion, or which involve use of explosives; and (3) crimes which "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." Id. § 924(e)(2)(B)(i)-(ii). In Johnson, the Supreme Court invalidated the third category of offenses, known as the "residual clause," as unconstitutionally vague. Johnson, 135 S. Ct. at 2557.

Strausbaugh's due process claim in ground 16 has nothing to do with Section 922(g), the ACCA, the now-unconstitutional residual clause in Section 924(e)(2)(B)(ii), or a similarly phrased provision. Johnson thus has no relevance to the case *sub judice*. Strausbaugh has failed to present any record evidence or relevant case law to support this due process claim. We will therefore deny it.

### 3. Ground 22 – Underpayment of CJA Counsel

In supplemental ground 22, Strausbaugh claims that the Criminal Justice Act of 1964 (the "CJA" or the "Act"), 18 U.S.C. § 3006A, violates his Sixth Amendment right to counsel. Strausbaugh asserts that he was represented by a CJA attorney who was grossly underpaid under the Act and, as a result of this inadequate compensation, he received constitutionally deficient representation.

This claim fails for at least three reasons. First, Strausbaugh proffers no explanation for why this challenge was not raised at the trial level or on direct appeal, and therefore it is procedurally defaulted. See *supra* note 2. Second,

Strausbaugh misapprehends that the hourly rate ($60 per hour) and case maximum ($7,000 per attorney for a felony case) first reflected in the Act in 1988 and 2006, respectively, are the current rates.  (See Doc. 218 at 2); 18 U.S.C. § 3006A(d)(1) (1988); 18 U.S.C. § 3006A(d)(2) (2006).  Strausbaugh's figures are inaccurate, as CJA rates are subject to annual adjustment and currently stand at $148 per hour and $11,500 per felony case maximum, which maximum can be easily waived when representation is either "extended" or "complex."  18 U.S.C. § 3006A(d)(1)-(3); Guide to Judiciary Policy, Volume 7, Part A §§ 230.16(a), 230.20, 230.23.20(a), 230.23.40.  Third, Strausbaugh provides no authority—binding or persuasive— indicating that appointment and payment of defense counsel under the CJA violates a defendant's Sixth Amendment rights.  As Strausbaugh recognizes, criminal defendants have "a constitutional right to counsel, but not to counsel paid a certain fee."  United States v. Jones, 801 F.2d 304, 315 (8th Cir. 1986) (citation omitted); see also United States v. Graham, 72 F.3d 352, 359 (3d Cir. 1995).  We will deny relief on ground 22.

### 4.   *Ground 24 – Purported Sixth Amendment Violation via Forfeiture Allegations*

The superseding indictment added forfeiture allegations.  (See Doc. 29 at 4-6).  In particular, the government sought forfeiture of the Strausbaughs' residence in New Oxford, Pennsylvania.  (Id. at 5).  Several days after filing the superseding

indictment, the government placed a *lis pendens* on this property.[3] (Doc. 32).
Strausbaugh argues that the *lis pendens* violated his Sixth Amendment right to
counsel of his choice because it inhibited him from accessing the property's equity
to hire a private attorney. He contends that the government purposefully filed the
*lis pendens* to prevent him from selling the property until after the bench trial.

Assuming *arguendo* this claim is not procedurally defaulted, it is meritless.
The government avers that the real property was "upside down," *viz.*, its market
value was less than the amount of the outstanding mortgage loan thereon. (See
Doc. 134; Doc. 255 at 2). More importantly, the Third Circuit has explained that a *lis
pendens* is not an impermissible pretrial restraint on alienation because, unlike a
court-ordered freeze, a *lis pendens* does not categorically prevent sale of the
property. United States v. Thomas, 750 F. App'x 120, 125 (3d Cir. 2018)
(nonprecedential). Strausbaugh has presented some evidence that the
government's June 2011 appraisal was inaccurate, but he has provided no factual
support for his contention that the *lis pendens* impeded him from selling his
residence. See id. at 126.

Strausbaugh has also failed to rebut the government's position, maintained
through the end of his trial, that forfeiture was entirely appropriate under 18 U.S.C.
§ 2253 because the subject property was used in the production of child

---

[3] A "*lis pendens*" is a notice filed "to warn all persons that certain [real]
property is the subject matter of litigation, and that any interests acquired during
the pendency of the suit are subject to its outcome." *Lis pendens*, BLACK'S LAW
DICTIONARY (10th ed. 2014).

pornography.  That the government actually sought forfeiture of the property at trial, regardless of the alleged negative-equity situation, defeats Strausbaugh's claim that the government's sole motivation for leaving the *lis pendens* in place was to deny him counsel of choice.  Strausbaugh has a Sixth Amendment right "to counsel that he can afford to hire, but he does not have a right to the release of funds subject to forfeiture to obtain counsel of his choice."  United States v. Thomas, 440 F. App'x 148, 151 (3d Cir. 2011) (nonprecedential) (citing Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 626-33 (1989)); United States v. Monsanto, 491 U.S. 600, 614-15 (1989) (citation omitted).  Accordingly, ground 24 provides no basis for relief.

## B.    Ineffective Assistance of Counsel

Strausbaugh asserts 13 claims of ineffective assistance of counsel in violation of the Sixth Amendment.  A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms, and (2) the deficient representation was prejudicial.  See id. at 687-88.  The defendant bears the burden of proving both prongs.  See id. at 687.  Conclusory allegations are insufficient to entitle a defendant to relief under Section 2255.  See United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000); Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63 (1977)).

To determine whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct.  Strickland, 466 U.S. at 689.  There is a strong presumption that counsel's performance falls within the broad range of reasonable professional assistance.  See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."  Id. at 711 (citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.  Strickland, 466 U.S. at 694.  The district court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one.  See Strickland, 466 U.S. at 697; United States v. Lilly, 536 F.3d 190, 196 (3d Cir. 2008).

### 1.    *Ground 1 – Failure to Raise Jurisdictional Challenge*

Strausbaugh first argues that his trial counsel, James West, Esquire ("Attorney West"), was ineffective for failing to raise an as-applied due process challenge to the jurisdictional hook—in Sections 2251(a) and 2252A(a)(5)(B)—of "using material" that has traveled in interstate or foreign commerce.  Strausbaugh acknowledges that Attorney West challenged the constitutionality of those statutes generally, but he maintains that Attorney West should have focused the attack on the jurisdictional bases specific to the facts *sub judice*.  We have discussed this argument at length and explained its lack of merit.  See *supra* Section III(A)(1).

Moreover, the record conclusively demonstrates that the government met its burden of proof to establish jurisdiction. See Strausbaugh, 534 F. App'x at 184. Because "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument," United States v. Bui, 795 F.3d 363, 366-67 (3d Cir. 2015), we will deny Strausbaugh's first ineffective assistance claim.

### 2.   *Ground 2 – Failure to Challenge Admissibility of Statements*

Strausbaugh maintains that, on the day he was arrested and his house was searched, postal inspector Michael Corricelli ("Corricelli") interrogated him without advising him of his rights in the manner required by Miranda v. Arizona, 384 U.S. 436 (1966). According to Strausbaugh, Corricelli first provided Miranda warnings immediately prior to a second, recorded interview.[4] Strausbaugh contends that Attorney West was ineffective for failing to press this point during suppression proceedings.

Despite Strausbaugh's post-conviction testimony to the contrary, the weight of the evidence supports the factual conclusion that Corricelli provided Miranda warnings to Strausbaugh both before the initial interview and immediately prior to

---

[4] Strausbaugh also claims that Corricelli improperly coerced statements by promising mental health treatment in lieu of prosecution or incarceration. This argument was presented to, and rejected by, the Third Circuit. See Strausbaugh, 534 F. App'x at 183. A Section 2255 motion is not a vehicle to relitigate claims already decided on direct appeal. Travillion, 759 F.3d at 288 (citing DeRewal, 10 F.3d at 105 n.4). Strausbaugh now characterizes this claim as one for ineffective assistance of counsel. We reject this characterization. The underlying substance of the argument is identical, and Attorney West cannot be found ineffective for failing to raise a frivolous suppression argument. Bui, 795 F.3d at 366-67.

the recorded statement.  At the Section 2255 hearing, Department of Homeland

Security Special Agent Trac Huynh ("Agent Huynh") credibly testified that the

search warrant was executed at the Strausbaugh residence at 6:20 a.m., and that

Agent Huynh witnessed Strausbaugh's receipt of <u>Miranda</u> warnings before *any*

interview was conducted.  (Hr'g Tr. 151:3-20, 153:20-154:25, 155:1-4).  The written

<u>Miranda</u> form provided to and signed by Strausbaugh reflects a time stamp of 6:46

a.m.  (Gov't Hr'g Ex. 1).  Subsequently, at the beginning of the recorded statement

commencing at 7:25 a.m., Strausbaugh confirmed that he and Corricelli had been

speaking for approximately 30 minutes and that, before any discussion, he had been

given <u>Miranda</u> warnings.  (Gov't Hr'g Ex. 2 at 1).  Corricelli testified that he

specifically included these opening questions in the recorded interview as further

documentation that—prior to any interrogation that occurred before the recorded

statement—Corricelli had provided <u>Miranda</u> warnings and Strausbaugh had

knowingly and voluntarily waived his rights.  (Hr'g Tr. 174:18-25).  Based upon this

record evidence, there was no basis to suppress Strausbaugh's inculpatory

statements for an alleged <u>Miranda</u> violation, and Attorney West was not ineffective

in failing to raise this meritless argument.

Assuming *arguendo* that Attorney West should have asserted and would have

prevailed on this argument, Strausbaugh cannot show prejudice.  Given the

extensive evidence of Strausbaugh's guilt, there is no reasonable probability that

the outcome would have been different but for admission of the time-of-arrest

statements.  That evidence includes, *inter alia*, emails sent from an email account

("wantmelittle@gmail.com") linked to Strausbaugh discussing the transfer of "good

nude pics of 8 month old niece"; the related IP address for this email account being registered to Strausbaugh's wife at their shared residence; a sexually explicit digital photograph ("PICT0321") transferred through that email account depicting an infant naked from the waist down on a couch, with the focus on the infant's genitalia; encoded data from that picture showing that it was taken by a Konica Minolta Dimage Z20 digital camera; a couch found in Strausbaugh's home with fabric matching the pattern of the couch in PICT0321; a Konica Minolta Dimage Z20 camera seized from Strausbaugh's house containing PICT0321 and additional child pornography; a hard drive containing child pornography and other instances of production of child pornography involving Strausbaugh's infant niece; a laptop computer seized from Strausbaugh's house with additional child pornography, including pornography involving Strausbaugh's infant niece; trial testimony from Strausbaugh's wife implicating him in the crimes of conviction; and, most notably, Strausbaugh's own highly inculpatory trial testimony.  Simply put, Strausbaugh can demonstrate neither deficient performance nor Strickland prejudice regarding his time-of-arrest statements.

### 3.    *Ground 3 – Failure to Challenge Search Warrant*

Strausbaugh next contends that Attorney West was ineffective for failing to challenge the search warrant for the Strausbaugh home as a violation of the First, Fourth, and Fifth Amendments.  The gravamen of this claim is that the warrant was obtained without probable cause because the emailed picture, PICT0321, does not qualify as child pornography and the written content of the emails is protected by the First Amendment.  This argument is unpersuasive.  The Third Circuit has

already held that even if PICT0321 did not qualify as child pornography, probable
cause existed to support the search warrant. Strausbaugh, 534 F. App'x at 182-83.
We will not relitigate this claim under the guise of ineffective assistance. See *supra*
note 4. The search warrant was amply supported by probable cause and Attorney
West's performance was not deficient for failing to raise a pointless suppression
argument.[5]

### 4.    *Ground 4 – Failure to Challenge Search of Blue Hard Drive*

Strausbaugh contends that the warrantless search of the blue external hard
drive, seized and searched several weeks after the search of Strausbaugh's home,
violated his Fourth Amendment rights. He argues that Attorney West should have
moved to suppress the related evidence from that hard drive and failure to do so
amounts to ineffective assistance. We find that Strausbaugh is unable to establish
prejudice because the inevitable discovery doctrine would obviate application of the
exclusionary rule even if the search, as conducted, was unlawful.

We provide some background information. During the initial search of
Strausbaugh's residence, agents failed to discover two external computer hard
drives—a green hard drive and a blue hard drive—initially stored in Strausbaugh's
office desk. (Hr'g Tr. 175:15-24). The drives were ultimately found in a 2003 Dodge
truck owned by Strausbaugh, although there is some discrepancy regarding who

---

[5] We also reject any independent First and Fifth Amendment claims
implicated in ground 3, as those claims were not raised prior to trial or on appeal
and are procedurally defaulted. See Travillion, 759 F.3d at 288 n.11 (citing
DeRewal, 10 F.3d at 105 n.4). To the extent they are characterized as ineffective-
assistance-of-counsel claims, they likewise lack merit.

moved the drives from the desk to the truck.  (<u>Id.</u> at 177:4-17; Doc. 241-1 at 12).

After listening to a recording of a pretrial prison conversation between Strausbaugh

and his close friend, Joshua Nace ("Nace"), Corricelli realized that law enforcement

had missed the hard drives during their search of Strausbaugh's residence, that

Nace had knowledge of the location of the drives, and that those drives may contain

additional evidence.  (Hr'g Tr. 175:17-24; Doc. 277-3 at 7).

Strausbaugh had given Nace possession and power of attorney (or something

akin to it) over the truck while he was incarcerated and awaiting trial.  (<u>See</u> Hr'g Tr.

20:22, 176:24-177:2; Gov't Hr'g Ex. 7 at 2).  Upon request, Nace consented to a search

for, and seizure of, the hard drives, executing a formal consent-to-search form

covering his real property and vehicles.  (Hr'g Tr. 176:6-21; Gov't Hr'g Ex. 6).

Corricelli testified that, while searching the truck with voluntary assistance from

Nace, the green and blue hard drives were discovered.  (Hr'g Tr. 177:6-17, 184:11-

13).  Corricelli photographed the drives and took them to the state police crime

laboratory, instructing that they be searched.  (<u>Id.</u> at 177:116-178:2).  When asked to

provide either a search warrant or a consent form in accordance with standard

protocol, Corricelli produced Nace's consent form, believing it was sufficient to

permit a search of the drives.  (<u>Id.</u> at 177:20-178:7).  Additional pornographic

pictures of Strausbaugh's infant niece were discovered on the blue drive, and,

because those pictures were taken on different dates than PICT0321, they

constituted the basis for Counts IV and V of the superseding indictment.  (<u>Id.</u> at

189:5-190:14; Doc. 29 at 1, 3-4).

The United States raises multiple arguments attempting to support the warrantless search of the blue hard drive, none of which is persuasive. The government initially contends that Nace gave valid consent to search the hard drive, but this argument fails. Nace—as mere bailee of the drives—most likely lacked authority to consent to their search, as there is little evidence that he had "common authority" over the drives, that there had been mutual use of them, or that Strausbaugh had relinquished his privacy in them. See United States v. Matlock, 415 U.S. 164, 170-71 (1974); United States v. Stabile, 633 F.3d 219, 230-33 (3d Cir. 2011); United States v. King, 604 F.3d 125, 137 (3d Cir. 2010). But even if Nace did have common authority over the drives, there is no evidence that he gave consent to search them. The consent-to-search form Nace signed is unambiguous, only authorizing law enforcement to search for and seize Strausbaugh's "computer hard drives." (Gov't Hr'g Ex. 6). Nowhere on the form does it indicate that Nace gave consent to search the drives, nor did any law enforcement agent receive verbal consent from Nace to search them.

We likewise reject the government's argument that Strausbaugh had no expectation of privacy in the blue hard drive because he talked about it during the recorded prison conversation with Nace. The government provides no authority for the proposition that discussing personalty in a recorded conversation removes an expectation of privacy in the undisclosed contents of that property rather than in the conversation itself.

Nor did Strausbaugh "abandon" the hard drive by asking Nace to hold it and keep it secure. Abandonment for Fourth Amendment purposes is an objective,

totality-of-the-circumstances inquiry of whether an owner relinquished his reasonable expectation of privacy in the subject property.  United States v. Harrison, 689 F.3d 301, 307 (3d Cir. 2012).  Proof of intent to abandon property "must be established by clear and convincing evidence."  Id.  The government has not met this burden.  *Per contra*, the recorded prison conversation objectively establishes that Strausbaugh did *not* abandon the drive, as he specifically tells Nace "I need that" and asks Nace to "hang on to it" for him.  (See Doc. 277-3 at 7).

It does not appear that any exception to the warrant requirement applies. Nonetheless, evidence obtained from the warrantless search of the blue hard drive was admissible pursuant to the inevitable discovery doctrine.  Under this doctrine, evidence discovered by unlawful governmental action can still be admitted at trial if the government can show, by a preponderance of the evidence, that the information or contraband "ultimately or inevitably would have been discovered by lawful means[.]"  United States v. Vasquez De Reyes, 149 F.3d 192, 195 (3d Cir. 1998) (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).  The doctrine is an exception to the exclusionary rule grounded in the logic that, while the government should not be put in a better position from an improper search, it also should not be put "in a worse position than [it] would have been in if no unlawful conduct had transpired." Nix, 467 U.S. at 445.  The government can satisfy its burden by showing that law enforcement, "following routine procedures, would inevitably have uncovered the evidence."  Vasquez De Reyes, 149 F.3d at 195.  This analysis must be based on "historical facts capable of ready verification" rather than mere speculation.  Id. (citing Nix, 467 U.S. at 444 n.5).

The inevitable discovery exception is not to be "casually invoked," lest it "swallow[] the Fourth Amendment and the exclusionary rule[.]" United States v. Jones, 72 F.3d 1324, 1334 (7th Cir. 1995). It does not apply in circumstances where law enforcement had probable cause to obtain a search warrant but simply chose not to do so, as this would "completely obviate" the Fourth Amendment's warrant requirement. United States v. Reilly, 224 F.3d 986, 995 (9th Cir. 2000). The exception instead applies "only when the fact that makes discovery inevitable is born of circumstances other than those brought to light by the illegal search itself." Id. (citing United States v. Boatwright, 822 F.3d 862 (9th Cir. 1987)). The doctrine requires the court "to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." Vasquez De Reyes, 149 F.3d at 195 (quoting United States v. Kennedy, 61 F.3d 494, 498 (6th Cir. 1995)); United States v. Herrold, 962 F.2d 1131, 1140 (3d Cir. 1992).

When the facts of the case *sub judice* are viewed against this settled legal landscape, application of the inevitable discovery doctrine becomes irrefutably appropriate. Corricelli plainly had probable cause that would support a search warrant of the blue hard drive. He had already obtained a valid warrant for Strausbaugh's residence and any computer-related effects located therein based on his investigation and specialized knowledge of child pornography offenses. That search produced extensive evidence of child sexual exploitation and production of child pornography. Corricelli then listened to a pretrial conversation between Strausbaugh and Nace during which the conversants identified the overlooked hard

drive and strongly implied that the drive contained additional illegal material.  (See Doc. 277-3 at 7).

If this were the end of the story, the inevitable discovery doctrine likely would not apply because probable cause alone is insufficient to implicate the exception.  See Reilly, 224 F.3d at 995; United States v. Richardson, No. 3:2006-CR-31, 2007 WL 2823336, at *2-3 (W.D. Pa. Sept. 27, 2007) (collecting cases).  But there is more.  Acting on his well-informed suspicions, Corricelli spoke with Nace and obtained consent to search for, and seize, the blue hard drive.  With Nace's assistance, Corricelli located the drive in Strausbaugh's truck, lawfully seized it, and took it to the state police crime lab with the intent that it be searched for child pornography.  The lab, as standard procedure, required either a warrant or a consent form to search the drive.  It is at this point where the illegality occurred because Nace's consent form did not authorize a search of the drive.

When viewing the facts as they existed just prior to the search, what would have happened but for the unlawful search is clear: Corricelli, following routine procedures, would have obtained a search warrant and the hard drive would have been lawfully inspected for evidence of child pornography.  See Vasquez De Reyes, 149 F.3d at 195.  This conclusion does not require speculation; it is readily verifiable from the facts that existed independent of the illegal search.  Corricelli was specifically looking for the hard drive because he believed—with good reason—that it contained evidence of criminality; he obtained lawful, written consent from Nace to search for and seize the drive; and he took the lawfully seized drive to the crime lab for the specific purpose of having it inspected.  Corricelli also testified

unequivocally that, had he not mistakenly believed the consent form was sufficient, he would have obtained a search warrant as required by the lab's standard protocol. (Hr'g Tr. 182:6-14).  These circumstances show that the drive inevitably would have been lawfully searched and its illegal contents discovered; any contrary conclusion simply defies logic.  The inevitable discovery doctrine thus would have vitiated the exclusionary rule's application to evidence obtained from the warrantless search of the blue hard drive.  Consequently, even if Attorney West's conduct was deficient in failing to move to suppress that evidence, Strausbaugh cannot show prejudice under the second <u>Strickland</u> prong.  We will deny relief on ground 4.

### 5.  *Ground 5 – Failure to Retain Expert to Challenge Pornographic Nature of PICT0321*

Strausbaugh alleges that Attorney West was ineffective for failing to retain an expert who could have testified in suppression proceedings that PICT0321 was not child pornography but was instead art or an innocent picture.  According to Strausbaugh, such testimony would have demonstrated that probable cause was lacking to support the search warrant for his residence, and application of the exclusionary rule would have rendered inadmissible his statements and the physical evidence seized.  We disagree.

First, although Strausbaugh identified a potential expert at the evidentiary hearing, (Hr'g Tr. 30:3-12), he failed to provide a report or affidavit from this expert or proffer specifics of the testimony that would be offered.  Simply identifying an expert and speculating about how that expert *may* testify is insufficient to establish that Attorney West's conduct was deficient and prejudicial.  Strausbaugh cannot

meet his burden under <u>Strickland</u> "based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense." <u>Zettlemoyer v. Fulcomer</u>, 923 F.2d 284, 298 (3d Cir. 1991); <u>United States v. Minerd</u>, No. 99-CR-215, 2012 WL 1069946, at *12 (W.D. Pa. Mar. 29, 2012); cf. <u>Palmer v. Hendricks</u>, 592 F.3d 386, 395 (3d Cir. 2010).

Regardless of whether an expert would have offered testimony aligning with Strausbaugh's assertions, that fact alone would not have undermined the validity of the search warrant for Strausbaugh's home.  As the Third Circuit explained on appeal, the warrant was amply supported by probable cause independent of whether PICT0321 legally qualified as child pornography.  The court concluded, "Any reasonable magistrate considering the photograph, which depicted the nude infant, the email exchange, in which it was clear that the purpose was to exchange nude pictures of infants for the purpose of sexual excitement, and the fact that the email originated from the Strausbaugh home would find a 'fair probability' that criminal activity was taking place" there.  <u>Strausbaugh</u>, 534 F. App'x at 183.  Hence, Attorney West was not ineffective for failing to obtain an expert to challenge the pornographic nature of PICT0321 and legality of the search warrant.

### 6.   *Ground 6 – Failure to Challenge PICT0321 as Pornography*

In a related claim, Strausbaugh maintains that Attorney West should have argued at trial that PICT0321 was not child pornography.  Had Attorney West done so, Strausbaugh claims, there would have been no evidence to support conviction on Count II—distribution of child pornography based on the email correspondence to Canada with PICT0321 attached.

We examined this photograph at the evidentiary hearing. (Hr'g Tr. 78:20-79:13). As described in the search warrant, PICT0321 shows "a prepubescent girl who appears to be under one year of age. She is lying on what appears to be a couch and i[s] naked from the waist down. Her legs are spread and the clear focus of the image is on her vaginal area. The baby appears to have a bib on and this bib is lifted up over her face." (Doc. 214 at 9 ¶ 23). There is no diaper or changing pad in the picture. (Hr'g Tr. 46:17-24).

Section 2256 of Title 18 of the United States Code in effect at the time of Strausbaugh's prosecution and conviction defines "sexually explicit conduct," in pertinent part, as the "lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v) (2006). The Third Circuit has adopted the so-called Dost factors to determine if a photograph depicts lascivious conduct. United States v. Franz, 772 F.3d 134, 156 (3d Cir. 2014) (referencing United States v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986)). The Dost factors are

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) whether the child is fully or partially clothed, or nude;
>
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

United States v. Larkin, 629 F.3d 177, 182 (3d Cir. 2010) (citations omitted). This list

"is not exhaustive and no single factor is dispositive." Doe v. Chamberlin, 299 F.3d

192, 196 (3d Cir. 2002). The presence of only one factor is insufficient to implicate

lascivious conduct, but "all six factors need not be present." United States

v. Villard, 885 F.2d 117, 122 (3d Cir. 1989). "Child pornography is not created when

the pedophile derives sexual enjoyment from an otherwise innocent photo."

Larkin, 629 F.3d at 184 (quoting Villard, 885 F.2d at 125).

The government concedes that the third and fifth factors are not implicated.

It is not an unnatural pose for an eight-month-old infant to be placed on her back

with her legs spread for a diaper change and the infant (being only eight months

old) was incapable of suggesting sexual coyness or a willingness to engage in sexual

activity. Nonetheless, the weighted balance of the remaining factors as applied to

PICT0321 leads us to conclude that the picture contains "sexually explicit conduct"

and thus constitutes child pornography.

The first Dost factor is present because focus of the picture is on the infant's

genitals. The infant's legs are spread, her genitals are exposed, her face is covered

by a bib, and parts of her feet are cut off by the edges of the picture. This manner of

pose is generally associated with sexual activity, implicating the second factor.

Franz, 772 F.3d at 157. The fourth factor is also present; the infant is only partially

clothed, being naked from the waist down except for socks. See United States

v. Strausbaugh (Rebecca), 534 F. App'x 175, 178 (3d Cir. 2013) (nonprecedential)

(noting that fourth <u>Dost</u> factor was implicated because infant was only partially clothed).

Finally, the content of the emails sent between Strausbaugh and his Canadian correspondent make clear that the depiction is intended to elicit a sexual response in the viewer. Strausbaugh wrote that he had "some good pics of 8 month old niece" and to let him know if the recipient "want[ed] to trade if" he had "nude" pictures. (Doc. 214 at 8 ¶ 22). The individual responded that he had "lots of nudes" and asked for "a preview." (<u>Id.</u>) Strausbaugh supplied that preview, PICT0321, and offered to send a "set" if the individual sent "some back," with Strausbaugh noting that he "like[d] personal pics." (<u>Id.</u>) This conversation clearly indicates that Strausbaugh emailed PICT0321 with the intent of eliciting a sexual response from the Canadian recipient so as to receive other child pornography in return. <u>See</u> <u>Larkin</u>, 629 F.3d at 184. Strausbaugh admitted as much at the evidentiary hearing. (Hr'g Tr. 47:21-48:9). Strausbaugh also conceded that he had viewed the pictures he took of his niece for sexual gratification; under such circumstances, Strausbaugh could be considered a "viewer" just as much as the Canadian recipient. (Hr'g Tr. 48:3-9); <u>Strausbaugh (Rebecca)</u>, 534 F. App'x at 178.

The presence of the first, second, fourth and sixth <u>Dost</u> factors establishes that PICT0321 constitutes a lascivious exhibition of the genitals or pubic area, and therefore qualifies as "sexually explicit conduct" under 18 U.S.C. § 2256(2)(A)(v). It follows that Attorney West was not ineffective in failing to contest at trial whether PICT0321 was child pornography.

### 7.   *Ground 7 – Failure to Move to Sever Trial*

Strausbaugh claims that Attorney West was ineffective in failing to move under Federal Rule of Criminal Procedure 14 for severance of Strausbaugh's trial from his wife's.  He contends that he did not receive a fair trial because his wife asserted that she was a battered spouse subject to Strausbaugh's psychological, emotional, and physical abuse, and Attorney West failed to cross-examine her about this defense or her abuse allegations.  Strausbaugh argues that this unchecked, inflammatory evidence, which would have been inadmissible if he had been tried separately, prejudiced him at trial and sentencing and therefore his conviction and sentence cannot stand.

We initially observe that it is unclear whether Strausbaugh actually wanted Attorney West to seek a severance or whether a joint trial was part of Strausbaugh's strategy to mitigate his wife's criminal exposure.  Strausbaugh testified at the evidentiary hearing that he had asked Attorney West to seek a severance.  (Hr'g Tr. 32:23-33:3).  Attorney West explicitly contradicted that testimony, explaining that after the potential plea deal fell apart, Strausbaugh "didn't want a severance" and wanted to pursue a trial strategy where he took the blame so that his wife might be able to avoid conviction so their son would not "be an orphan."  (Id. at 108:5-109:6, 112:13-24, 116:10-22, 117:4-118:13, 129:8-130:1).  Even if we viewed the facts on this issue in Strausbaugh's favor, the claim is unavailing; Strausbaugh cannot establish that opting to forgo a severance motion was unreasonable under the instant circumstances.

It is fundamental that the federal system prefers joint trials of defendants indicted together "because joint trials promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." United States v. Lore, 430 F.3d 190, 205 (3d Cir. 2005) (quoting United States v. Urban, 404 F.3d 754, 775 (3d Cir. 2005)).  Criminal defendants are not entitled to separate trials merely because they may stand "a better chance of acquittal" under such circumstances, and unadorned allegations of prejudice are insufficient to warrant severance.  Urban, 404 F.3d at 775-76 (quoting Zafiro v. United States, 506 U.S. 534, 540 (1993)).  The court should grant a motion to sever under Rule 14 only when "there is a serious risk that a joint trial would compromise *a specific trial right* of one of the defendants, or prevent the jury from making a reliable judgment *about guilt or innocence*."  Id. at 775 (emphasis added) (quoting Zafiro, 506 U.S. at 539).  A defendant seeking severance bears "a heavy burden," id., and must "pinpoint clear and substantial prejudice" resulting in a manifestly unfair trial, United States v. Riley, 621 F.3d 312, 335 (3d Cir. 2010) (citation omitted).

Strausbaugh cannot meet this burden.  Instead of focusing on whether a trial right was compromised or whether he could reliably be found guilty, Strausbaugh dwells on the alleged deleterious effect of his wife's trial strategy on the court's perception of his character and, ultimately, on his sentence.  Indeed, the gist of Strausbaugh's argument appears to be that although he and his wife were "equally culpable," he received a more severe sentence because of the prejudice caused by his wife's defense tactics.  (See Doc. 213 at 79; Doc. 234 at 30-32; Hr'g Tr. 33:11-18, 34:4-6).  First, this assertion of unfairly disparate treatment is belied by the facts and

evidence adduced at trial, the multiple charges naming only Strausbaugh, Strausbaugh's criminal history, and other individualized sentencing factors.  More importantly, it ignores the overwhelming evidence of Strausbaugh's guilt on all counts of conviction, in particular his repeated admissions to the offenses.  (See, e.g., Doc. 152, 10/25/11 Trial Tr. 18:7-12, 22:10-23:12, 30:15-22, 34:17-21, 35:7-24, 38:4-24, 43:1-11, 56:8-14).  In no way does Strausbaugh explain how his codefendant's "inflammatory" evidence altered the court's ability to make a reliable judgment about guilt or innocence.  The law regarding severance is not concerned with sentencing disparities, but rather fundamental fairness at trial.  See Urban, 404 F.3d at 775; United States v. Saxby, No. 1:11-CR-132, 2012 WL 1230730, at *1 (M.D.N.C. Apr. 12, 2012).  Strausbaugh has failed to "pinpoint" how his *trial*—as opposed to his sentence—was manifestly unfair such that it was unreasonable for Attorney West to forgo filing a motion to sever.  Ground 7 provides no basis for relief.

### 8.    *Ground 8 – Strausbaugh's Trial Strategy*

Strausbaugh next argues that Attorney West was ineffective in allowing Strausbaugh to testify at trial and by "inducing self[-]incrimination" through direct examination.  (Doc. 213 at 61).  This claim is baseless.  The record conclusively shows that Attorney West's actions were prompted by Strausbaugh's chosen trial strategy.  Attorney West testified in great detail that Strausbaugh's goal was to mitigate his wife's criminal exposure at their joint trial.  (Hr'g Tr. 108:5-109:6, 112:13-24, 116:10-22, 117:4-118:13, 129:8-130:1).  And Strausbaugh admitted during the recorded prison conversation and at the evidentiary hearing that this was his

intention. (Doc. 277-3 at 7; Hr'g Tr. 52:17-53:8). Strausbaugh cannot now claim that

his attorney erred by doing exactly what Strausbaugh asked of him, especially when

that strategy is not objectively unreasonable or constitutionally foreclosed.

### 9.   *Ground 9 – Opening Door to Proffer Evidence*

Strausbaugh alleges that Attorney West was ineffective for opening the door

to evidence from the June 2011 proffer session with law enforcement. Strausbaugh

claims that, but for Attorney West's ill-advised questions on direct examination,

damaging evidence from the proffer session regarding Strausbaugh's multiple

transfers of child pornography would not have been admitted at trial.

This argument is unpersuasive because that specific testimony was

inconsequential at trial. Strausbaugh's conviction on Count II—distribution of

child pornography—was proven beyond a reasonable doubt by the email transfer of

PICT0321 to Canada. Because PICT0321 qualifies as child pornography under the

Dost factors, see *supra* Section III(B)(6), no other images needed to be transferred

to establish guilt on the distribution charge. Accordingly, even if Attorney West had

been deficient in opening the door to proffer-session evidence, Strausbaugh cannot

demonstrate prejudice.[6] We will deny relief on ground 9.

---

[6] Strausbaugh also contends that he was "severely prejudiced" at sentencing
by admission of this additional distribution evidence. (Doc. 234 at 27). He
speculates that he would not have received a 180-month sentence on Count II if
only a single transfer had been considered, and instead would have been sentenced
to "the mandatory minimum of 5 years or less via a downward departure." (Doc.
213 at 65). Strausbaugh provides no evidence or support for this contention and we
can find none in the record. His bald assertions and conclusory allegations are
insufficient to establish a right to post-conviction relief. See Palmer, 592 F.3d at
394-95; Thomas, 221 F.3d at 437.

### 10. *Ground 10 – Allowing Government to Present Materially False Evidence*

In his tenth claim of ineffective assistance, Strausbaugh asserts that Attorney West performed unreasonably by allowing the prosecution to present materially false evidence at trial related to the discovery and seizure of the blue hard drive. Nothing new is introduced in this ground for relief. Strausbaugh merely repackages his suppression-based ineffectiveness argument in ground 4 by stating that the government provided false evidence at trial about the discovery of the hard drive. Strausbaugh ignores the fact that any discrepancy in the transit of the drive is immaterial; the drive was lawfully seized from Strausbaugh's truck with Nace's written consent. Moreover, testimony regarding discovery of the drive is irrelevant to issues of guilt or innocence. That evidence bears only on the question of admissibility. We have already thoroughly addressed the blue hard drive's seizure and search and the admissibility of its contents. See *supra* Section III(B)(4). Because there is no independent claim for presentation of false evidence, we will deny relief on ground 10.

### 11. *Ground 11 – Failure to Obtain Specific Expert Witness*

Strausbaugh maintains that Attorney West was ineffective for failing to call "world renown[ed] Sex Offender and Treatment Specialist" Dr. Fred S. Berlin ("Dr. Berlin") to testify at sentencing. (Doc. 213 at 68). Strausbaugh posits that Dr. Berlin would have evaluated him and testified favorably at sentencing as to Strausbaugh's potential for rehabilitation, as well as provided mitigating testimony

regarding general statistics for sex offender rehabilitation potential.  (Hr'g Tr. 39:25-40:8, 41:10-12, 41:24-42:2).

Attorney West employed Robert L. Sadoff, M.D. ("Dr. Sadoff"), a doctor and professor of psychiatry with experience in providing expert opinions in criminal matters, to evaluate Strausbaugh and prepare a report prior to sentencing.  Dr. Sadoff met with Strausbaugh and issued a comprehensive 13-page report, indicating that Strausbaugh was ready for "meaningful psychotherapy and treatment" with an appropriate specialist, and that such treatment would be "long term and intense."  (Doc. 148-6 at 12-13).  Dr. Sadoff recommended "placement in an institutional setting" where Strausbaugh could receive "psychotherapy, with medication."  (Id. at 13).  Dr. Sadoff also recommended a period of probation following incarceration so that Strausbaugh's behavior in the community could be monitored.  (Id.)  Attorney West testified that he had contacted Dr. Berlin and did not recall any material difference between Dr. Berlin's potential expert testimony and that already provided by Dr. Sadoff.  (See Hr'g Tr. 122:22-125:17).  Both experts would opine that Strausbaugh "could benefit from treatment, that all was not lost." (Id. at 123:4-21).  As a result, and in light of the approaching sentencing hearing, Attorney West decided to use Dr. Sadoff's expert opinion to establish that Strausbaugh was capable of rehabilitation and that treatment could be utilized in lieu of extensive incarceration.  (Id. at 123:10-124:2)

We cannot say that Attorney West's conduct fell below an objective level of reasonableness under prevailing professional norms.  Strausbaugh's claims of how Dr. Berlin's testimony would have differed from Dr. Sadoff's report are entirely

speculative.  Dr. Sadoff opined that Strausbaugh could benefit from long-term

therapy.  But Dr. Sadoff also had significant concerns about Strausbaugh's

reintegration into the community after incarceration, and Strausbaugh identifies no

evidence or proposed testimony from Dr. Berlin that would counter this

professional opinion.  Because Strausbaugh has not carried his burden to prove

either <u>Strickland</u> prong for this claim, we will deny relief on ground 11.

### 12.   *Ground 12 – Failure to Correct PSR*

Strausbaugh claims that Attorney West was ineffective in failing to correct

"factual inaccuracies" in the presentence report ("PSR") related to his 2008

conviction for indecent assault.  (Doc. 213 at 76).  Strausbaugh alleges the Federal

Bureau of Prisons ("BOP") improperly relied on the PSR's description of other

offenses charged in the 2008 prosecution which were dropped as part of the plea

bargain.  Strausbaugh posits that Attorney West's error effected an unwarranted

increase in both his inmate security designation and custody classification, which

caused him to be placed with violent offenders.

We reject this claim because Strausbaugh has not identified any errors in the

criminal history section of his PSR that Attorney West should have pursued.  The

PSR indicates that Strausbaugh was *charged* with 27 counts of various sexual

offenses based on victim allegations but pled guilty to only indecent assault.  (Gov't

Hr'g Ex. 11 ¶ 69).  Strausbaugh has not established how any of the PSR's

information is "inaccurate" and, consequently, Attorney West was not ineffective

for failing to object to it.  If Strausbaugh takes issue with the BOP's utilization of

accurate information in his PSR to determine his custody classification, he must

seek administrative remedy with the BOP.  See generally 28 C.F.R. § 542.10 et seq.;

see also 18 U.S.C. §§ 3621(b), 4081; 28 C.F.R. § 0.96(c).  Ground 12 does not warrant

Section 2255 relief.

### 13.    *Ground 23 – Failure to Contest "Perjured" Testimony*

In his final ineffectiveness claim, Strausbaugh argues that Attorney West was

deficient for failing to cross-examine Corricelli about allegedly false testimony

Corricelli offered on direct examination.  The testimony in question (once again)

concerns the circumstances surrounding the search and seizure of the blue hard

drive.  Strausbaugh alleges that Corricelli lied about how he discovered the hard

drive and how he obtained the drive from Nace.

None of the testimony cited by Strausbaugh supports the contention that

Corricelli intentionally offered false testimony at trial which the government knew

or should have known was false.  At best, Strausbaugh's citations reveal minor

inconsistencies between Corricelli's trial testimony and the transcript of the prison

conversation between Nace and Strausbaugh.  (See Doc. 241-1 at 5-6).  Mere

discrepancy in testimony is insufficient to prove perjury; Strausbaugh must show

that the government witness "actually perjured himself and the government knew

or should have known of his perjury."  Lambert v. Blackwell, 387 F.3d 210, 249 (3d

Cir. 2004).  Trivial differences in Corricelli's trial testimony and the prison-

conversation transcript do not establish actual perjury.

Assuming *arguendo* the statements were perjurious, Strausbaugh cannot

show that they had any prejudicial effect on his trial.  To show prejudice,

Strausbaugh must demonstrate "a reasonable likelihood that the perjured

testimony affected the judgment of the jury," Haskell v. Superintendent Greene

SCI, 866 F.3d 139, 152 (3d Cir. 2017), or "could have affected the verdict," United

States v. John-Baptiste, 747 F.3d 186, 210 (3d Cir. 2014).  Strausbaugh once more

incorrectly focuses on the perceived prejudice stemming from the *admission of the*

*contents* of the blue hard drive as opposed to the purportedly perjured testimony

itself.  Strausbaugh's allegations do not implicate the type of fundamental due

process violation that would undermine the verdict.  As discussed above,

circumstances surrounding seizure of the hard drive are relevant only when they

implicate potential Fourth Amendment violations and admissibility concerns.

Attorney West was not ineffective for failing to challenge immaterial inconsistencies

in Corricelli's trial testimony relating to how the hard drive was discovered and

seized: that testimony had no effect on the court's judgment as to Strausbaugh's

guilt on any count of conviction or on the fairness of his trial.  We will deny relief on

ground 23.

### 14.    *Grounds 18, 19, 20 – Cumulative Error*

Strausbaugh asserts that even if Attorney West's alleged errors—before trial,

during trial, and at sentencing—individually do not warrant relief, their cumulative

prejudice rises to the level of a constitutional violation.  "The cumulative error

doctrine allows a petitioner to present a standalone claim asserting the cumulative

effect of errors at trial that so undermined the verdict as to constitute a denial of his

constitutional right to due process."  Collins v. Sec'y of Pa. Dep't of Corr., 742 F.3d

528, 542 (3d Cir. 2014) (analyzing cumulative error in context of habeas petition

under 28 U.S.C. § 2254).  Cumulative error claims have been recognized in Section

2255 proceedings.  United States v. Williams, No. 1:12-CR-194-17, 2018 WL 1783172,

*9 (M.D. Pa. Apr. 13, 2018) (citing United States v. Fields, 761 F.3d 443, 483 (5th Cir.

2014); United States v. Olsen, 704 F.3d 1172, 1196-97 (9th Cir. 2013)).  To establish

that cumulative errors were not harmless, a defendant must show that they had a

"substantial and injurious effect or influence in determining" the verdict.  Albrecht

v. Horn, 485 F.3d 103, 139 (3d Cir. 2007) (citation omitted).  This quantum of

prejudice is essentially the same as the Strickland prejudice standard.  Id. (citing

Whitney v. Horn, 280 F.3d 240, 258-59 & n.18 (3d Cir. 2002)).

We summarily reject Strausbaugh's cumulative error claims.  In analyzing

Strausbaugh's claims of ineffectiveness at sentencing (grounds 11 and 12), we found

no deficient performance by Attorney West.  Assuming without deciding that

cumulative error could extend to sentencing errors, there can be no cumulative

error or related prejudice when there are no errors to aggregate.  See United States

v. Graves, 613 F. App'x 157, 163 n.9 (3d Cir. 2015) (nonprecedential); United States

v. House, 684 F.3d 1173, 1210-11 (11th Cir. 2012); Ragan v. Horn, No. 2:00-CV-2092,

2016 WL 1241771, at *10 (E.D. Pa. Mar. 29, 2016).

Strausbaugh's claim regarding guilt-phase errors similarly lacks merit.  In

grounds 2, 4, and 9, we assumed—for the sake of argument only—that Attorney

West's conduct fell below prevailing professional norms.  See supra Section

III(B)(2), (4), (9).  Of those assumptive errors, only ground 2 could possibly have

resulted in any prejudice to Strausbaugh.  Grounds 4 and 9 had no prejudicial

impact.  If only one ineffectiveness claim potentially caused prejudice, which did

not rise to the level required by Strickland, logic dictates that there can be no relief

for "cumulative" prejudice. Thus, even if Attorney West's actions were deficient, Strausbaugh cannot establish that the cumulative effect of those errors "had a substantial and injurious effect or influence" on the verdict. <u>Albrecht</u>, 485 F.3d at 139. The cumulative error claims provide no basis for relief.

## IV. **Conclusion**

We will deny Strausbaugh's motion (Doc. 212) under 28 U.S.C. § 2255, as supplemented, in its entirety. We will also deny a certificate of appealability because Strausbaugh has failed to make the requisite "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: May 21, 2019